Valent, Appellant, *v.* Berwind-White Coal Mining Company.

Argued November 10, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and GUNTHER, JJ. (ARNOLD, J., absent).

*George Jerko,* for appellant.

*Francis A. Dunn,* with him *Archibald M. Matthews, G. A. Whitehouse,* Associate Counsel, *Ralph H. Behney* and *Robert E. Woodside,* Attorney General, for appellees.

OPINION BY HIRT, J., January 20, 1953:

In this action the widow of George Valent sought to recover compensation after the death of her husband

on May 4, 1950, from occupational disease. He had worked as a miner in the defendant's bituminous coal mines, for many years. The Board ultimately found: "Fifteenth: . . . that [George Valent] became totally disabled on March 30, 1946 as a result of anthraco-silicosis by reason of the employment. . . . in a hazardous occupation having a silica hazard for the necessary statutory period". On a further finding that he on March 13, 1947 "knew or should have known that he was totally disabled as a result of anthraco-silicosis" an award of compensation was refused because of his failure to give notice of his disability to the defendant employer, within ninety days from that date. The claim was disallowed also for a second reason based upon a finding by the Board "that the death of the decedent, George Valent, occurred more than three years from the date of his last employment with defendant. herein". Section 311 of the Occupational Disease Act of June 21, 1939, P. L. 566, 77 PS §1411 requires notice to the employer within ninety days "after the beginning of disability". And under §301(c) of the Act as amended, 77 PS §1401, compensable death from occupational disease is restricted to death within three years from the date of last employment in the hazardous occupation.

Following the order of disallowance the widow-claimant petitioned the Board for a rehearing on the single ground that the record in this case will not support the conclusion that her husband on March 13, 1947, (corrected to May 13, 1947) knew or should have known that his total disability was attributable to occupational disease. The Board refused a rehearing. The present appeal is from the order of the lower court affirming the action of the Board. In our view there is error in the refusal of a rehearing; the order will be reversed.

Admittedly, the burden was on this claimant to show compliance with statutory requirements. But George Valent in his lifetime, on September 20, 1947, filed a claim petition for compensation and the circumstances do not charge him with knowledge before that date that his total disability was from occupational disease. It is difficult to imagine a case in which there could be more uncertainty in medical opinion. And we are unwilling to say, from this record, that George Valent must have known that his total disability was attributable to anthraco-silicosis when it required at least 5 hearings over a period of 4 years to establish that fact to the satisfaction of the Board.

By agreement the testimony before the referee on the claim of George Valent in his lifetime was made a part of the proofs in the present proceeding brought by his widow. The referee in effect found upon competent evidence (and the Board did not disturb the findings) that decedent became totally disabled on March 31, 1946; and that tests at the Windber Hospital where he was treated for lobar pneumonia from April 26 to May 18, 1946 demonstrated the presence of active tuberculosis of the right lung and a bundle branch block resulting from a degenerative myocardial disease. At the first hearing before the referee on December 2, 1947, Dr. A. C. F. Zobel testified that from an examination of the claimant on October 29, 1946, he found a mass in the upper right pulmonary zone but he was then unable to make a definite diagnosis as to the cause of the condition and "was quite confused". He examined the claimant a second time on May 13, 1947, and then made a diagnosis of a moderately advanced anthraco-silicosis in both lungs with a secondary tuberculosis involvement. At the hearing he expressed the opinion that these conditions had totally disabled the claimant.

The remaining testimony is a maze of conflicting medical opinion. Dr. W. S. Wheeling in charge of Windber Hospital had observed George Valent there during April 1946. He was called by the defendant and testified at the first hearing that a positive sputum test indicated tuberculosis and from electrocardiogram examination he found a bundle branch block. He had read a series of x-ray films and stated that, although he found a mild form of anthraco-silicosis, the disabling factors in his opinion were pulmonary tuberculosis of the right upper lobe and myocardial disease. Dr. H. B. Anderson for defendant used the evidence of the x-ray films and the history taken by Dr. Wheeling and from them, and a heart examination, he diagnosed claimant's total disability as attributable wholly to tuberculosis of the right lung and a degenerative heart disease. On appeal from the disallowance of the claim by the referee, in that proceeding, the Board appointed an impartial medical expert in chest diseases and remanded the record to the referee. Dr. I. H. Alexander the impartial medical witness so appointed considered all of the testimony before the referee and made a physical examination of claimant. He testified at the hearing on May 19, 1949, that claimant presented a clinical picture most difficult to evaluate although he was of the opinion that claimant did not then have active tuberculosis but that "well advanced anthraco-silicosis" was present and claimant suffered from a chronic myocardial disease. He gave that tentative opinion as to claimant's condition, as the most likely under the evidence, but admitted that he was unable to make a positive diagnosis. He found the claimant in an extreme state with a life expectancy in his opinion of only a few weeks and he suggested that final decision be withheld until after death and an autopsy. The suggestion was adopted but the claimant did not die

until May 4, 1950, about one year later. His widow then filed the present claim.

A post mortem examination was had. Dr. F. S. Mainzer who performed the autopsy reported that he diagnosed the cause of death as "Anthraco-silicosis tuberculosis" with failure of the right side of the heart due to fibrotic condition of the lungs. Dr. H. A. Slessinger who was present at the autopsy took a different view. He found only moderate anthraco-silicosis to a degree insufficient to have produced either disability or death. By agreement the reports of these physicians, based upon their findings at the autopsy, were referred to the impartial expert who had testified in the case of the employe-claimant in his lifetime. At a hearing on January 31, 1951, Dr. I. H. Alexander, the impartial medical witness, then gave it as his opinion based upon the autopsy reports and the history of the case, that the cause of death was "silico-tuberculosis, and that the cardiac lesions were secondary to [decedent's] pulmonary pathology". Dr. W. S. Wheeling who was again called at a further hearing on May 7, 1951, accepted the view expressed in the autopsy report of Dr. Mainzer. In this more or less balance of the proofs the Board on August 21, 1951, referred the record to the Medical Board in accordance with §420 of the Occupational Disease Act of June 21, 1939, P. L. 566, then in effect. The Medical Board found that the cause of death was "anthraco-silicosis with superimposed active tuberculosis". The Workmen's Compensation Board in its Fifteenth finding, quoted above, adopted the finding of the Medical Board as to the cause of death but refused an award for the reasons above stated.

In construing §311 of the Occupational Disease Act we have consistently held that the prescribed ninety-days notice runs "from the time the employe is disabled

and definitely *knows* he is disabled *by the occupational disease"*: *Roschak et ux. v. Vulcan Iron Works,* 157 Pa. Superior Ct. 227, 234, 42 A. 2d 280; *Nickolay v. Hudson Coal Co.,* 164 Pa. Superior Ct. 550, 67 A. 2d 828; *Tracey v. M. & S. Coal Co., Inc.,* 165 Pa. Superior Ct. 569, 69 A. 2d 184; *Coma v. Hudson Coal Co.,* 166 Pa. Superior Ct. 503, 72 A. 2d 604; *Shemanchick v. M. & S. Coal Co., Inc.,* 167 Pa. Superior Ct. 350, 74 A. 2d 764.

The basis, and the sole basis, of the Board's finding that George Valent knew or should have known that anthraco-silicosis was the cause of his disability is the testimony of Dr. Zobel referred to above. Yet there is not the slightest evidence in this record that Dr. Zobel or any other person ever told Valent that he had come to that conclusion. Nor in fact does it appear from Dr. Zobel's testimony that he himself held that opinion on May 13, 1947 when he examined claimant for the second time and took additional x-rays. So also, the decedent-claimant cannot be charged with that knowledge in the light of the almost hopeless disagreement of the eminent medical witnesses who testified in this case—a disagreement which persisted even after the autopsy.

Since the Occupational Disease Act like the Workmen's Compensation Act must be liberally construed (*Harvey v. Philadelphia W. & C. S. Co.,* 167 Pa. Superior Ct. 435, 74 A. 2d 815; *Roschak et ux. v. Vulcan Iron Works,* supra) to effect its remedial and humanitarian purposes, no claimant should be barred from the benefits of the Act by an adverse finding of fact on a technical question of notice unless such finding is based on substantial competent evidence which definitely and expressly excludes claimant or, stated otherwise, (since the holding is adverse to the claimant) if the finding is in capricious disregard of the competent evidence.

Dr. Zobel unequivocally testified that the date of his second examination of Valent was May 13, 1947. His reference to March 13, 1947 elsewhere in his testimony, as the date of the examination (which the Board found to be the date when that claimant was charged with knowledge of the cause of his disability) was an inadvertent misstatement. Even May 13, 1947 was more than 90 days prior to the time when the original claim petition was filed on September 20, 1947. But nevertheless, in view of the confused state of the record the present claimant should have every opportunity in the rehearing prayed for, to establish when if ever her decedent knew that he was disabled by occupational disease. The present claimant seeks to prove that after Dr. Zobel's second examination of her husband, he reserved his medical opinion until after receiving a report of a Dr. Cole based upon a review of the x-rays and this report was not received until July 11, 1947; that he concurred in Dr. Cole's diagnosis on August 15, 1947 that the claimant was disabled from silicosis. The defendant admitted that it had notice of that fact on August 25, 1947. This claimant also seeks to prove that on August 25, 1947, and not until then, the disabled employe was advised by a representative of the Compensation Department of his union that he was suffering from silicosis and that Valent then notified the defendant to that effect. The original claim petition was filed about one month later. Dr. Cole's report to Dr. Zobel presumably was made in writing as was Dr. Zobel's report to J. W. Stephenson, the union official. If so, both of these reports should be made a part of the record. For these purposes and for the reasons to which we have referred, a rehearing as prayed for should be granted inasmuch as the Board on the evidence in the present record abused its discretion in its order based upon a finding of fact on a cru-

cial aspect of the case in unwarranted disregard of the proofs, in the light of the circumstances. *Gaffey v. John J. Felin Co. et al.*, 162 Pa. Superior Ct. 222, 57 A. 2d 432; *Owatt v. Rodman's Beverage*, 169 Pa. Superior Ct. 339, 82 A. 2d 255.

If, but only if, the decedent-claimant was not barred by the requirement of notice in §311, the widow-claimant will be entitled to an award within the limits of §301(a) 2. The effect of our decisions in *Toffalori v. Donatelli Granite Co.*, 157 Pa. Superior Ct. 311, 43 A. 2d 584 and *Wonderlick v. The Phila. & Read. C. & I. Co.*, 170 Pa. Superior Ct. 65, 84 A. 2d 233, is that when a *valid* claim for total disability from occupational disease has been filed by an employe during his lifetime, the three years limitation, from the date of the employe's last employment to the date of death under §301(c) supra, is inapplicable. In the *Toffalori* case, supra, the widow was found to be entitled to compensation more than three years after the termination of her husband's last employment because he had asserted a *valid* claim to compensation during his lifetime and had been paid compensation up to the time of his death. The compensation payable to the widow, as a dependent of the decedent, in that case was the balance of the allowable total under the then Act of Assembly. And in the *Wonderlick* case, supra, the claim of the widow was refused for the reason that, although her husband had filed a claim for compensation in his lifetime, his claim was invalid because he had failed to give the 90 days notice.

Under the unusual circumstances present in this case the fact that the Board's finding of the date of the onset of decedent-claimant's total disability, namely: March 30, 1946, was not made until after his death and that consequently no part of the compensation due him was paid during his lifetime, are insufficient rea-

sons for refusing relief. It was at the suggestion of the impartial medical expert appointed by the Board that final diagnosis of the cause of claimant's disability, admittedly total, was deferred until after the workman's death which was then believed to be imminent. Defendant's acquiescence in the deferment, shown by the record, is further reflected in the referee's consolidation of the decedent-claimant's petition and the widow's claim.

But a significant fact overlooked by all parties is that the decision to hold the original claim in abeyance was not made until May 19, 1949, more than three years after March 30, 1946, the date of decedent-claimant's last employment. Accordingly, the limitation provisions of §301(c) would necessarily bar any subsequent claim for *death* benefits.

Unless barred by the notice requirements of §311, decedent filed a valid claim during his lifetime. If so, on the authority of the above decisions, unless the instant proceeding is considered in effect as a continuation of the original claim petition, we would be faced with the anomalous result that through no fault of their own, both the decedent-claimant and his widow have been barred from all benefits of the Act.

We may not decide questions of fact; accordingly the case must be sent back for rehearing and determination by the Board, on the question whether decedent complied with the statutory requirement as to notice. *Nickolay v. Hudson Coal Co.,* supra.

The order is reversed, and the record is remitted to the court below with directions to remand it to the Board for further proceedings not inconsistent herewith.